UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROBERT L. TAYLOR,

Petitioner,

v.

STEPHEN SMITH,

Respondent.

Case No. 2:24-cv-0982-TLN-JDP (P)

FINDINGS AND RECOMMENDATIONS

Petitioner Robert L. Taylor, represented by counsel, seeks a writ of habeas corpus under 28 U.S.C. § 2254. ECF No. 1. He brings six claims, five arguing that he was denied his right to effective counsel, and one arguing that he was denied his right to a fair trial by impartial jurors. *Id.* at 5-6. Respondent has answered the petition, ECF No. 12, and petitioner has filed a traverse, ECF No. 13. After reviewing the pleadings, I recommend that petitioner's claims be denied.

**Background**

I have reviewed the background summary articulated by the state appellate court on direct appeal. It is correct, and I reproduce it here:

> Briana P.'s mother was married to defendant from July 2000 to May 2001. Briana was very close to defendant and his daughters. Briana testified defendant was like a father to her. She maintained communication with defendant and remained close friends with his daughters after she and her mother moved out of defendant's house. Briana described an occasion when defendant gave her a massage as she lay face down, covered by a sheet and wearing only her

underwear, and defendant "was getting sort of close to some areas" that made Briana uncomfortable. Briana was 12 or 13 years old at the time of the incident.

Haley G.'s mother dated defendant after being close friends with him for a long time. Haley, her mother and her brother lived with defendant and his daughters from January 2005 until sometime after July 2006. Defendant was like a stepfather to Haley. Haley had a very close relationship with him.

Haley was 23 years old at the time of the trial. She testified about seven incidents of inappropriate touching when she was 11 years old. She said defendant touched her vagina with his hands, inserted his fingers in her vagina and massaged her bare buttocks with his hands. Haley continued to communicate with defendant after she and her mother moved out of defendant's house.

Jade L. was 23 years old at the time of the trial. Defendant was married to Jade's aunt. Jade had a very close relationship with defendant and his daughters. She visited defendant and her cousins at defendant's home, and the two families went on vacations together. Jade testified that defendant placed his hand under her shirt and rubbed her breast during a camping trip when she was 12 years old. The camping trip occurred in August 2006.

Emily H.'s mother also dated defendant. Emily, her mother and her brother lived with defendant and his daughters for about four years beginning in October 2008. Emily viewed defendant as a stepfather and was very close to him. She testified that defendant touched her inappropriately during massages starting when she was 16 until she was 19.

The People charged defendant with seven counts alleging a lewd act upon a child under the age of 14 (§ 288, subd. (a)—counts I-VI, XII), one count of misdemeanor sexual battery (§ 243.4, subd. (e)—count VII), one count of forcible sexual penetration (§ 289, subd. (a)(1)—count VIII), and three counts of molesting a child under the age of 18 (§ 647.6, subd. (a)(1)—counts IX-XI). Defendant testified at the trial and denied the allegations against him.

The jury convicted defendant on five counts of a lewd act upon a child (§ 288, subd. (a)—counts I to V) against Haley and one count of a lewd act upon a child (§ 288, subd. (a)—count VI) against Jade. The jury found true allegations that Haley was under the age of 14 and that defendant engaged in substantial sexual conduct with her within the meaning of section 1203.066, subdivision (a)(8) as to counts II through V. The jury also found true an allegation that defendant committed sexual offenses against more than one victim within the meaning of section 667.61, subdivision (e)(4).

The jury found defendant not guilty on the count VIII (§ 289, subd. (a)(1)) and XII (§ 288, subd. (a)) charges involving Emily and Briana. It could not reach a verdict on the count VII (§ 243.4, subd. (e)), IX (§ 647.6, subd. (a)(1)), X (§ 647.6, subd. (a)(1)) and XI

> (§ 647.6, subd. (a)(1)) charges relating to Emily, and the People later dismissed those counts. The trial court sentenced defendant to a prison term of 30 years to life.

ECF No. 10-22 at 2-4.

## Discussion

### I. Legal Standards

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. *See* 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). Section 2254 of Title 28, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs a state prisoner's habeas petition. *See Harrington v. Richter*, 562 U.S. 86, 97 (2011). To decide a § 2254 petition, a federal court examines the decision of the last state court that issued a reasoned opinion on petitioner's habeas claims. *See Wilson v. Sellers*, 584 U.S. 122, 125 (2018); *Van Lynn v. Farmon*, 347 F.3d 735, 738 (9th Cir. 2003) ("Because, here, neither the court of appeal nor the California Supreme Court issued a reasoned opinion on the merits of this claim, we look to the trial court's decision."); *McCormick v. Adams*, 621 F.3d 970, 975-76 (9th Cir. 2010) (reviewing the decision of the court of appeal, which was last reasoned decision of a state court); *Gill v. Ayers*, 342 F.3d 911, 917 n.5 (9th Cir. 2003) ("Because the California Supreme Court denied review of Gill's habeas petition without comment, we look through the unexplained California Supreme Court decision to the last reasoned decision . . . as the basis for the state court's judgment.") (internal quotations omitted).

Under AEDPA, a petitioner may obtain relief on federal habeas claims that have been "adjudicated on the merits in state court proceedings" only if the state court's adjudication resulted in a decision (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

### II. **Analysis**

As noted above, petitioner raises six claims, five for ineffective assistance of counsel and one based on denial of his right to a fair trial by impartial jurors.

A. Ineffective Assistance of Counsel Claims

i. Expert Witness Claims

In his first two claims, petitioner argues that trial counsel rendered ineffective assistance by failing to call defense expert witnesses William O'Donohue, an expert in child psychology and sexual abuse, and Sidney Nelson, a psychologist. O'Donohue would have been called to testify as to the propensity of alleged victims to make false accusations. ECF No. 1 at 5. Nelson would have been called to testify to the lack of propensity of petitioner to commit sex offenses. *Id.*

These claims were presented in habeas petitions to the Nevada County Superior Court, the California Court of Appeal, and the California Supreme Court. ECF Nos. 10-25 at 3-4; 10-29 at 6; 10-31 at 6-70. They were denied, first in a reasoned decision by the superior court, ECF No. 10-28 at 5-7, then in silent decisions by the court of appeal and supreme court, ECF Nos. 10-30 & 10-33. I look to the superior court's reasoning in evaluating these claims. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.").

The superior court stated:

> The defense appears to have had three (3) expert witnesses at their disposal during the defense portion of the case: (1) Donohue; (2) Nelson; and (3) Davis. Trial counsel had the benefit of assessing the reports or other discovery materials provided by each expert prior to making the decision as to whether to call a particular witness. Ultimately, only Davis was called to testify before the jury. Nonetheless, trial counsel did utilize Donohue to aid in Petitioner's defense. He did so in the limited capacity of an *in limine* hearing whereby he successfully excluded evidence from Real Party's expert. Counsel thus had the benefit of assessing both Donohue's report (and his proposed testimony) as well as his demeanor on the stand before deciding whether or not to call him as a defense witness. Counsel's selective calling of available experts after a full investigation had been conducted, reports generated,[1]

[1] [footnote two in original text] For instance, as Real Party notes, the reports of Dr. Nelson contained information that trial counsel may quite reasonably have evaluated to be more damaging than helpful, e.g., that Petitioner's PAI profiled was questionable insofar as he "presented himself in a consistently favorable fashion, not admitting to common shortcomings which most people will admit." Such testimony indicating dishonesty, or at least lack of forthrightness, on behalf of Petitioner could be particularly damaging where, as here, he testified

> and appropriate time to consider the same cannot be said to *per se* fall below the objective standard of reasonableness. Such decision making presumably constitutes a "reasonable and consistent trial strategy," and this Court must accord the requisite deference to counsel in electing to utilize experts in this fashion. (*See In re Fields* (1990) 51 Cal. 3d 1063, 1705; *see also Strickland*, *supra*, 466 U.S. at 689.) Had counsel failed to consult with any experts, review discovery or conduct a proper initial investigation, the result might well be different.

ECF No. 10-28 at 5-6.

A "doubly" deferential standard governs a federal habeas petitioner's claim of ineffective assistance of counsel. *See Richter*, 562 U.S. at 105. On direct appeal, the two-step inquiry from *Strickland v. Washington* guides the analysis for an ineffective-assistance-of-counsel claim. 466 U.S. 668, 687 (1984). In this inquiry, a criminal defendant must first show some deficient performance by counsel that is "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Id.* Second, the defendant must show that the deficient performance caused him prejudice, which requires "showing that counsel's errors were so serious as to deprive [the petitioner] of a fair trial." *Id.* On habeas review, coupled with § 2254(d)'s fairminded jurist standard, the *Strickland* requirements become even more deferential: the question is "whether there is *any* reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105 (emphasis added). That is, if there is even one reasonable argument that counsel did not violate the *Strickland* standard—even if the state court has not identified such argument—the petitioner cannot obtain habeas relief. *See id.* at 106.

Here, the state court's findings constitute a reasonable argument that counsel was not ineffective in declining to call O'Donohue or Nelson. As to O'Donohue, petitioner argues that he should have been called to "give opinion testimony based on hypothetical questions tailored to fit the alleged victims' complaints, the circumstances in which they arose, and any in-consistencies embedded in the various statements as they emerged." ECF No. 1-2 at 46. This is insufficient to carry petitioner's burden of showing that there is a reasonable probability that the outcome of the

---

in his own defense and his credibility would play a central role in the jury's assessment of claims involving the sexual abuse of children.

proceedings would have been different had this testimony been offered. *See Strickland*, 466 U.S. at 694 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."). While it is conceivable that this possible testimony could have impacted the verdicts, *Strickland* demands that the "likelihood of a different result must be more than just conceivable." *Richter*, 562 U.S. at 111-12 (internal quotation marks omitted). Even the declaration of criminal defense attorney, Stephen A. Munkelt, upon which petitioner relies, states that O'Donohue's testimony had only "the prospect of lessening the credibility of the complaining witnesses . . . ." ECF No. 6 at 162. This is far less than the "reasonable probability" that *Strickland* demands.[2] Moreover, other federal courts have rejected habeas relief in cases where counsel declined to retain an expert witness who could have provided a rationale as to why a victim might lie about a sexual encounter. *See Ortiz v. Sec'y of Corr.*, No. 2:18-cv-01409-RSWL-MAA, 2020 U.S. Dist. LEXIS 212662, *33-36 (C.D. Cal. Apr. 10, 2020). Finally, as the superior court indicated in its holding, tactical decisions, such as whether to call a particular witness after assessing his proposed testimony and demeanor on the stand, are "virtually unchallengeable." *Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.").

Neither is petitioner entitled to relief based on his counsel's decision not to utilize Nelson. The superior court, in a footnote, found that trial counsel might have reasonably declined to use this expert's reports because they contained information indicating that petitioner was dishonest or, at least, possessed of "[a] lack of forthrightness . . . ." ECF No. 10-28 at 6 n.2. This is the sort of strategic decision that this court owes deference to, particularly after viewing it through the

[2] In his argument, petitioner offers various answers to hypothetical questions that O'Donohue could have offered that might have undercut the victims' testimony. ECF No. 1-2 at 49-50. But again, this possible testimony is nowhere near sufficient to show a reasonable probability of a different outcome. The testimony offered in response to hypotheticals could, conceivably, have swayed the jurors, but this is insufficient. A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The failure to offer O'Donohue's possible testimony that would have obliquely attacked the credibility of the victims simply does not reach this standard.

doubly deferential lens of AEDPA. A fairminded jurist could agree with the superior court's finding and, thus, this court should not disturb it.

ii. Omission of Evidence Claims

In his third and fourth ineffective assistance claims, petitioner argues that: (1) trial counsel rendered ineffective assistance by failing to introduce evidence that a complaining witness previously made a false accusation against another individual; and (2) trial counsel rendered ineffective assistance by failing to move impeaching text messages into evidence. The superior court considered the first of these claims in its reasoned decision. It did not consider the second, however, because it was raised for the first time in the subsequent petition to the California court of appeals. Both claims should be denied.

Petitioner argues that trial counsel should have entered evidence that one victim, Emily H., made an allegation against another individual, Mohammed H., that was false. The state superior court reasonably found that no relief was warranted for this claim:

> Likewise, trial counsel's decision not to call Mohammed H. or otherwise elicit testimony about the alleged false rape claim from the alleged victim or another witness must be assessed, not with the benefit of hindsight, but from counsel's perspective at the time. For instance, there is no related information about an investigation for filing a false police report against the victim. And, as Petitioner notes, trial counsel "concluded that [Mohammed M.] could not be presented to the jury due to an unwillingness to testify and his assertion of his Fifth Amendment privilege." [citations omitted]. Had trial counsel raised the issue through the victim or another third party knowing full-well Mohammed M. would either not take the stand or assert his Fifth Amendment privilege, the result may well have been the victim attesting to the rape and the perpetrator taking the stand and pleading the Fifth, thereby hazarding grave risk of damage to Petitioner's defense. Given the foregoing, trial counsel could have reasonably concluded eliciting testimony on the subject would do more harm than good. Trial counsel knew of the claim and both considered and investigated same before making the decision not to proceed. Here, such must be presumed "reasonable and consistent trial strategy." The Court will not apply hindsight in second-guessing that decision.

ECF No. 10-28 at 6-7. Trial counsel's weighing of the potential risks and benefits of introducing evidence pertaining to the 'false' allegation is the sort of tactical decision to which this court owes deference. "Tactical decisions that are not objectively unreasonable do not constitute ineffective assistance of counsel." *Hensley v. Crist*, 67 F.3d 181, 185 (9th Cir. 1995). Petitioner

argues that trial counsel might have called the investigating officer in the case against Mohammed H. that was dismissed without prosecution, ECF No. 1-2 at 67, but he offers no indication as to the specifics of what testimony this individual would have offered. "A trial attorney has wide discretion in making tactical decisions, including the ability to abandon inconsistent or unsupported defenses. . . . Counsel need not be infallible or recognize and raise every possible basis for defense." *Harris v. Borg*, No. C 92-1768 BAC, 1994 U.S. Dist. LEXIS 9224, *4 (N.D. Cal. Jun. 28, 1994).

Petitioner fares no better on his claim that trial counsel should have introduced transcripts of text messages between himself and a victim for the purposes of impeaching the latter's testimony. As noted above, there is no reasoned decision on this claim and, thus, the court must consider what arguments or theories could have supported the state court's decision. *See Richter*, 562 U.S. at 102 ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court."). Petitioner has failed to show that he was prejudiced by his counsel's decision not to enter a transcript of the text messages between him and victim H.G. into evidence. Notably, the victim was questioned about the text messages and their content on the stand. *Compare* ECF No. 6 at 211-12 and ECF No. 10-9 at 139-141. He argues that the jury might have gleaned some additional information by viewing the printouts of the text messages but does not adequately explain what this additional context might have been or how there is a reasonable probability of a different result if that context had been added. He argues that "[i]t is apparent from the text messages that she flirted with petitioner and tried to get him to pay attention to her," and that "[w]hen this didn't work out, she joined the accusers." ECF No. 1-2 at 70. Putting aside this conjecture, petitioner's theory of H.G.'s motivation was already put before the jury. In relevant part:

> Q. So the pending question was did you ever send a text to Mr. Taylor asking to come over and keep him hot tub company?
>
> A. I did not send him a text message to come keep him company.
>
> Q. Why don't you read it before?
>
> A. I said maybe tomorrow I'll come keep you hot tub company. I was not asking.
>
> . . .
>
> Q. And then on A, do you also indicate that you're demanding, joking I would say, that he come see you at your house?
>
> A. Yes.

ECF No. 10-9 at 140. There can be no serious argument that the failure to present the text messages themselves to the jury was an error of such magnitude that, but for its occurrence, the result of the proceedings would have been different.

iii. Ineffective Assistance of Appellate Counsel

Petitioner argues that his appellate counsel rendered ineffective assistance by failing to argue on appeal that it was error to admit the testimony of Rachel O., a propensity witness, who was not a charged victim. ECF No. 1 at 6. The last reasoned decision on this issue was rendered by the superior court:

> Petitioner's sole claim as to appellate counsel's ineffectiveness is their failure to challenge the propriety of the trial court's admission of Rachel O.'s propensity evidence on the basis of Evidence Code section 1108. Appellate court review of a trial court's admission of propensity evidence under Section 1108 is highly deferential when the trial court properly applies Section 352 and duly considers whether the probative value of the evidence outweighs the concerns of undue prejudice. The same will not be disturbed on appeal except "on a showing that the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. (*People v. Frazier* (2001) 89 Cal. App 4th 30, 42). Here, the trial court judge's admission of Rachel O.'s propensity evidence was the result of due deliberation and consideration of Section 352, and the review it would have been afforded on appeal was, thus, highly deferential.
>
> As Petitioner notes, appellate counsel raised a colorable but ultimately unsuccessful issue of juror misconduct in the direct appeal. "A presumption of prejudice arises from any juror misconduct" and, when the same is shown, "it is presumed to be

> injurious to the defendant, unless the contrary appears." (*People v. Honeycutt* (1977) 20 Cal. 3d 150, 156.) Such misconduct, when adequately demonstrated on appeal, mandates reversal of the underlying conviction. (*See id.* at 161.) Appellate counsel thus targeted an issue of significant value to Petitioner and had a credible basis for doing so. Here, Petitioner has not overcome the presumption of reasonableness afforded to appellate counsel, because he has not demonstrated counsel "ignored issues [that] are clearly stronger than those presented." (*Robbins*, *supra*, 528 U.S. at 288.) The Court must, as with trial counsel, afford due deference to appellate counsel's selection of appealable issues in accordance with the dictates of *Strickland* and *Robbins*. Since Petitioner has not shown "objectively unreasonable" performance and thereby satisfied the first prong of the *Strickland* test, the Court need not and does not consider the second.

ECF No. 10-28 at 8-9.

The same *Strickland* standards articulated above also apply to appellate counsel. *See United States v. Vasquez*, No. 1:18-cr-00076-JLT-EPG-6, 2026 U.S. Dist. LEXIS 65223, *21 (E.D. Cal. Mar. 26, 2026) ("The *Strickland* standards apply to appellate counsel as well as trial counsel."). To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show that there is a reasonable probability that, but for appellate counsel's errors, he would have prevailed on appeal. *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989). Here, petitioner cannot make that showing. The superior court's finding that, under state law, an appellate claim challenging the admission of the propensity evidence was unlikely to succeed, is entitled to deference. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). And, if the claim was unlikely to succeed, appellate counsel was not obliged to raise it. *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) ("[E]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."); *Gray v. Greer*, 800 F.2d 644, 647 (7th Cir. 1986) ("[T]he right to effective assistance of appellate counsel does not require an attorney to advance every conceivable argument on appeal which the trial record supports.").

iv. Right to a Fair Trial

Petitioner argues that his right to a fair trial was violated when a juror who had herself been sexually assaulted relayed information to the jury beyond the scope of the admitted evidence. ECF No. 1 at 6. The California court of appeal denied this claim on direct appeal:

> Defendant's motion for a new trial was based in relevant part on alleged misconduct by Juror No. 3, who had disclosed in voir dire that she was molested as a child. Juror No. 3 was in her late 60s or early 70s at the time of the trial.
>
> During voir dire, defendant's trial counsel and the prosecutor examined Juror No. 3 about her disclosure. Juror No. 3 assured counsel that she could sit on the case impartially. She said she had "been on both sides" and had "seen people accused when it wasn't . . . ." She continued that many people were quick to accuse and once an accusation was made, "that's a terrible stigma" and "[i]f they're innocent, it's going to follow them the rest of their life." Juror No. 3 affirmed she was willing to follow the evidence in the case. The defense and prosecution did not excuse her for cause and they kept her on the jury panel even though they had unused peremptory challenges.
>
> In support of the new trial motion, defendant submitted the declaration of the jury foreperson. The foreperson said she cried when the verdict was read and later sent defendant's daughter a note, apologizing and letting the daughter know "there was someone in that deliberation room in [defendant's] corner." The foreperson's note to the daughter said, "I argued every way [I] could for him for 3 days" but the charges relating to Haley were very difficult to argue against.
>
> The foreperson attested that Juror No. 3 was quiet but, on the second day of deliberations, Juror No. 3 shared that she had been molested by a close family friend when she was between four and eight years old. The foreperson could not recall the context in which Juror No. 3 spoke. According to the foreperson, there were a lot of similarities between Juror No. 3's story and the evidence the jury heard at the trial. Juror No. 3 was abused by a close family friend, someone beloved in the community, who was "respectable" and "not some awful, slimy, sleaze ball kind." The foreperson said Juror No. 3 was "adamant from the beginning about the defendant's guilt" and the foreperson did not think there was any way Juror No. 3 was unbiased. The foreperson said Juror No. 3 "had the room riveted for several minutes with what happened to her and how those suppressed memories came up for her later in therapy. Everybody was very focused on her and it was very intense and very emotional. She was choking back tears, when she stopped speaking there was a collective—aw—everybody let their breath go. Some jurors teared up while Juror [No. 3] shared her experience." The foreperson recounted that Juror No. 3 said the

memory of her abuse did not come up until she was in her forties, in therapy for another issue. The foreperson further averred that Juror No. 3 repeatedly stated during deliberations that "This is how child molesters are;" "They do this kind of thing;" "They are often very beloved;" "That's what they do;" "This is how they operate;" "It's understandable or it's not hard to believe that you love the person that is doing this to you, you may even like the attention, it's not until later that you realize that something was wrong about it." According to the foreperson, Juror No. 3's comments were generalities about molesters. The foreperson opined that in Juror No. 3's mind the person who hurt her, and not defendant, was on trial. The foreperson also said defendant's case was his good character but Juror No. 3's repeated response to that was "he was grooming these girls." She said the other jurors seemed to give Juror No. 3 "more credibility and weight regarding the character and behavior of a molester and experience of their victim" and the foreperson believed some jurors perceived Juror No. 3 as an expert on molestation. Notwithstanding her concerns about the jury deliberations, the foreperson did not disavow the verdict.

Defendant subsequently submitted the declaration of Juror 766521. According to that juror, Juror No. 3 shared in the jury room that the perpetrator in her case was very close to her and that defendant's behavior was indicative of "grooming the girls."

The People opposed the new trial motion, arguing that portions of the foreperson's declaration were inadmissible under Evidence Code section 1150 and that the admissible portions did not show juror misconduct or prejudice.

The trial court denied defendant's motion. It found no misconduct by Juror No. 3 and nothing in the record suggesting an effort to convict that was influenced or instigated by Juror No. 3.

. . .

A verdict must be based on the evidence presented at trial and not on extrinsic matters. (*People v. Leonard* (2007) 40 Cal.4th 1370, 1414 (*Leonard*).) But jurors' views of the evidence are informed by their life experiences. (*In re Lucas* (2004) 33 Cal.4th 682, 696.) It is not necessarily misconduct for a juror to share during deliberations the juror's thoughts based on personal experience. (*Leonard*, at pp. 1381, 1413-1414; *In re Lucas*, at pp. 697; *People v. Yeoman* (2003) 31 Cal.4th 93, 162.)

Moreover, in considering a claim of juror misconduct, no evidence is admissible to show the effect of statements upon jurors in reaching a verdict or the mental processes by which the juror's decision was determined. (Evid. Code, § 1150, subd. (a); *People v. Steele* (2002) 27 Cal.4th 1230, 1261 (*Steele*).) Thus, the following statements by the foreperson are inadmissible under Evidence Code section 1150, subdivision (a), and we do not consider them in addressing defendant's contention: (1) some jurors perceived

Juror No. 3 as an expert; (2) in Juror No. 3's mind, her own molester and not defendant was on trial; (3) "this was not about the person on trial. This was more about her own internal trial;" (4) to Juror No. 3 defendant's "good character" "seemed to be evidence of his guilt;" and (5) "[e]verbody on the jury seemed to give [Juror No. 3] a lot more credibility and weight regarding the character and behavior of a molester and experience of their victim." (*People v. Hensley* (2014) 59 Cal.4th 788, 825, fn. 14 [a statement about the effect a conversation had on a juror's mind and decision cannot be considered]; *People v. Manibusan* (2013) 58 Cal.4th 40, 55, 57 [one juror's understanding of what another juror's statement meant was inadmissible, and a juror's statement about the effect information another juror shared had on his own and other jurors' subjective reasoning processes was also inadmissible]; *Steele*, *supra*, 27 Cal.4th at p. 1265 [statements about the effect jurors' statements had on the jury's deliberations were inadmissible].)

The foreperson averred that Juror No. 3's "interpretation" of evidence of defendant's good character was that defendant was "grooming these girls." A juror's evaluation of the evidence and rejection of a defense as not credible based on the juror's personal experiences does not by itself constitute misconduct. (*Leonard*, *supra*, 40 Cal.4th at p. 1414; *In re Lucas*, *supra*, 33 Cal.4th at p. 697, *Steele*, *supra*, 27 Cal.4th at pp. 1265-1267.) "'[J]urors cannot be expected to shed their backgrounds and experiences at the door of the deliberation room.'" (*In re Lucas*, at p. 696.) They "'bring to their deliberations knowledge and beliefs about general matters of law and fact that find their source in everyday life and experience.' [Citation.] This experience may stem from education or employment, but sometimes it comes from other personal experiences." (*Ibid.*) "'[J]urors are expected to bring their individual backgrounds and experiences to bear on the deliberative process.'" (*Ibid.*) The trial court instructed the jury that testimony about defendant's good reputation for appropriate behavior with children can create a reasonable doubt whether defendant committed the alleged offenses, the jury must decide the meaning and importance of the character evidence. The foreperson's statement indicates Juror No. 3 followed the trial court's instruction.

Moreover, where the evidence is susceptible to various interpretations, jurors may use their own experience to evaluate it within the range of permissible interpretation. (*Steele*, *supra*, 27 Cal.4th at p. 1265-1266.) Juror No. 3's statements about molesters in general and grooming were consistent with the conflicting evidence presented at trial.

The trial court instructed the jury that its verdict must be based only on the evidence presented at trial and the law the trial court provided. The trial court explained it was unfair to the parties if the jury received additional information from any other source because that information may be unreliable or irrelevant and the parties would not have the opportunity to examine and respond to it. It admonished the jury to use only the evidence presented in the courtroom to decide the facts. It defined evidence as the sworn

testimony of witnesses, exhibits admitted into evidence and anything else the trial judge told the jury to consider as evidence. It also said the jury must judge the credibility of the witnesses and the jury could use its common sense and experience in deciding whether testimony was true. Even if Juror No. 3 did not follow the trial court's instruction to use only the evidence presented in the courtroom to decide the facts, it appears she followed the instruction to use her common sense and experience in deciding whether testimony was true. Based on the totality of the circumstances, defendant has not established denial of due process or a fair trial.

*In re Lucas* is instructive. In that case, the defendant claimed he killed his neighbors while unconscious after injecting large quantities of methamphetamine, cocaine and heroin. (*In re Lucas*, *supra*, 33 Cal.4th at pp. 688, 691.) A referee appointed to conduct an evidentiary hearing and make findings concerning the defendant's claim of juror misconduct determined that a juror had concluded the defendant had lied about how much drugs he had taken or the effect those drugs had on the defendant; the juror shared his opinion with the other jurors; and the juror's opinion was based on the juror's personal experience with controlled substances and not on evidence received at the trial. (*Id.* at pp. 693, 695.) The California Supreme Court rejected the claim of juror misconduct. (*Id.* at p. 697.) It noted that the juror did not hold himself out as an expert in a technical matter on the basis of his education or occupation, but merely related his personal experience about a matter that was of fairly common knowledge, as it related to the evidence and the inferences the defendant wanted the jury to draw from the evidence. (*Ibid.*) The Court also considered the fact that the juror disclosed that he was a former addict and alcoholic during voir dire. (*Ibid.*) It held it was not substantially likely that any juror was biased by the challenged juror's comments, considering the general awareness people had of the effects of controlled substances, the mild and brief nature of the comments, the tentative spirit in which they were offered, and the lack of insistence that the comments should convince the other jurors to reject the defense. (*Ibid.*)

Here, the foreperson did not aver facts showing that Juror No. 3 presented herself as an expert on child molestation. Rather, Juror No. 3 shared her own experience of being sexually abused as a child, not a matter based on outside research or her education or profession. She disclosed in voir dire that she was a victim of child sexual abuse. Many venire members disclosed they, a family member or someone close to them had been a victim of sexual abuse as a child.

The record also does not establish inappropriate influence. The jury acquitted defendant on two counts and hung on four counts, indicating the jurors considered each count separately, it was not substantially likely that the Juror No. 3's statements affected the verdict, and no juror had an actual bias against defendant.

Defendant's contention lacks merit.

ECF No. 10-22 at 8-13. The California Supreme Court subsequently issued a summary denial of this claim. ECF No. 10-24.

Juror misconduct claims are subject to the Supreme Court's harmless error analysis articulated in *Brecht. v. Abrahamson*, 507 U.S. 619, 638 (1993). *See Jeffries v. Blodgett*, 5 F.3d 1180, 1190 (9th Cir. 1993). Under *Brecht*, the relevant inquiry is whether the misconduct or introduction of extrinsic evidence had a "'substantial and injurious' effect or influence in determining the jury's verdict." 507 U.S. at 638. Here, the state appellate court's determination that the juror's statements and actions were not substantially likely to have affected the verdict was not objectively unreasonable. *See Towery v. Schriro*, 622 F.3d 1237, 1243 (9th Cir. 2010) ("When a state court has found a constitutional error to be harmless beyond a reasonable doubt, a federal court may not grant habeas relief unless the state court's determination is objectively unreasonable."). That is, fairminded jurists could disagree as to its correctness. *Davis v. Ayala*, 576 U.S. 257, 269 (2015) ("[A] state-court decision is not unreasonable if fairminded jurists could disagree on [its] correctness.") (internal quotation marks omitted).

Petitioner cites two Court of Appeals cases, *Godoy v. Spearman*, 861 F.3d 956 (9th Cir. 2017) and *Mach v. Stewart*, 137 F.3d 630, 631-632, 634 (9th Cir. 1997), and argues that the state court's decision is in conflict with these decisions. But only decisions of the Supreme Court constitute clearly established federal law for the purposes of AEDPA. *See Grimes v. Bryan D. Phillips, Warden High Desert State Prison*, 105 F.4th 1159, 1165 (9th Cir. 2024) ("Federal law is clearly established if the Supreme Court has squarely addresse[d] a claim and provided a clear answer.") (internal quotation marks omitted). Moreover, much of petitioner's argument is premised on the notion that the juror presented herself as an expert on "grooming," contrary to the findings of the appellate court. ECF No. 10-22 at 13 ("Here, the foreperson did not aver facts showing that Juror No. 3 presented herself as an expert on child molestation. Rather, Juror No. 3 shared her own experience of being sexually abused as a child, not a matter based on outside research or her education or profession."). This finding is entitled to deference. *See Rushen v. Spain*, 464 U.S. 114, 120 (1983) ("Here, both the State's trial and appellate courts concluded that the jury's deliberations, as a whole, were not biased. This finding of 'fact'—on a question the

state courts were in a far better position than the federal courts to answer—deserves a 'high measure of deference,' and may be set aside only if it '[lacks] even 'fair support' in the record.") (internal citation omitted). The finding has 'fair support.' And, if as the appellate court found, the juror at issue in this claim merely shared her own experiences, then there was no violation of federal law. *See Rucker v. Lattimore,* 369 F. App'x 810, 813 (9th Cir. 2010) ("The district court did not err in rejecting Rucker's claim that her constitutional rights were violated when during jury deliberation jurors nine and two discussed their personal experiences as victims of sexual assault."); *Baez v. Fox*, No. CV 17-00198-VBF (SHK), 2018 U.S. Dist. LEXIS 98711, *30 (C.D. Cal. Mar. 16, 2018) ("Moreover, this Court is not aware of any holding by the Supreme Court where a juror's reliance on, or sharing of, his personal experiences to interpret testimony or evidence constitutes misconduct."); *see also Rushen*, 464 U.S. at 118 ("[T]he Constitution does not require a new trial every time a juror has been placed in a potentially compromising situation . . . [because] it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote.") (internal quotation marks omitted).

This claim should be denied.

**Conclusion**

Accordingly, it is RECOMMENDED that the petition for writ of habeas corpus, ECF No. 1, be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within fourteen days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: September 10, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE